## Mountain Water Supply Co. et al. v. Melcroft Coal Co.

*Corporations—Water companies—Eminent domain—Waters—Contamination of water by mining company—Intervention by Commonwealth—Equity— Parties—Acts of May 28, 1915, and July 7, 1919.*

1. Under the Act of May 28, 1915, P. L. 616, as amended by the Act of July 7, 1919, P. L. 731, the Commonwealth will be permitted to intervene as a party in any case where it is shown to have any interest.

2. The Commonwealth has an interest entitling it to intervene as a party plaintiff in a suit in equity, where two water companies, whose stock is owned by a railroad company, claim to have made legal appropriation of certain of the waters of a stream for their corporate purposes, and have erected a storage dam into which the waters are collected, and allege that a coal company is operating a mine and is draining its mine water, containing large quantities of sulphuric acid, into the stream above the storage dam, thereby rendering the waters of the stream, as they flow into the storage dam, unfit for domestic use, or for commercial or manufacturing purposes, to which uses plaintiffs have been devoting them, and an injunction is prayed for restraining the coal company from draining its mine water into the pure waters of the stream.

3. In such case, the Commonwealth has a right to intervene to protect the health and comfort of the citizens of the State.

Bill for an injunction, and petition for, and rule on parties plaintiffs and defendant to show cause why the Commonwealth should not be permitted to intervene as a party plaintiff. C. P. Fayette Co., No. 965, in Equity.

*Fred Taylor Pusey*, Deputy Attorney-General, and *George E. Alter*, Attorney-General, for Commonwealth.

*Paul H. Gaither, Smith & Best* and *Playford & Phillips*, for plaintiffs.

*Reed, Smith, Shaw & Beal, Crow, Shelby & Tabor, McDonald & Cray* and *John S. Brookes, Jr.*, for defendant.

VAN SWEARINGEN, P. J., Jan. 24, 1922.—This case is before the court now on a rule taken on the parties plaintiffs and defendant, on a petition of the Commonwealth ex rel. George E. Alter, Attorney-General, to show cause why

1 D. & C.

the petitioner should not be permitted to intervene as a party plaintiff in the cause, the petition containing the following allegations:

"1. That a bill of complaint has been filed in the case by the plaintiffs, alleging *(a)* that the defendant has negligently, wrongfully and unlawfully persisted in pursuing and developing mining operations so as to liberate daily, with the extension of said mining operations, large quantities of polluted and destructive mine water, thereby daily causing to flow into the pure waters of Indian Creek increased quantities of polluted and destructive mine water, whereby the waters of Indian Creek already have become injured, polluted and contaminated, to the end that the waters of Indian Creek are unfit for domestic use or for commercial or manufacturing purposes. *(b)* That the said defendant has mingled with the otherwise pure waters of Indian Creek additional quantities of polluted water, thereby increasing the quantity of polluted water being cast into the waters of Indian Creek above the masonry dam of the Mountain Water Supply Company, the Dunbar Water Supply Company and the Pennsylvania Railroad Company, in violation of the rights of the plaintiffs, and in violation of the rights of the public in and to the said pure stream of water. *(c)* That the acts of the defendant in polluting the waters of Indian Creek constitute a public nuisance.

"2. That a petition for leave to intervene was filed by the Westmoreland Water Company, setting forth that the Westmoreland Water Company is supplied by the plaintiffs and in turn supplies water to the public in the municipal districts of the County of Westmoreland, known as the Boroughs of Youngwood, Greensburg, South Greensburg, Southwest Greensburg, Jeannette, Irwin, Manor and Penn, and in the Townships of Unity, Hempfield, Penn and North Huntingdon, supplying in the districts named approximately 8500 domestic and industrial consumers, to whom it delivers daily approximately 3,500,000 gallons of water.

"3. That a petition has been filed with your petitioner, signed by some 1700 citizens of the Commonwealth of Pennsylvania, residents of the Counties of Westmoreland, Fayette, Washington and Allegheny, setting forth that the water supplied by the Mountain Water Supply Company is obtained from its reservoir maintained by it in the County of Fayette, in the water-shed of the said stream, known as Indian Creek, which stream above the reservoir drains a section of the southeastern part of Westmoreland County and the northeastern part of Fayette County; that in recent years large quantities of mine water have been discharged into the streams tributary to the said Indian Creek, which have polluted the waters of Indian Creek and caused irreparable loss and damage to the public; that said pollution of the waters of Indian Creek is in violation of the rights of the public and prejudicial to the interests of the community; and praying the Attorney-General to intervene for the Commonwealth of Pennsylvania on behalf of the public.

"4. That the supply of pure water by the plaintiffs is necessary to the health and comfort of the citizens of Westmoreland, Fayette, Washington and Allegheny Counties, and that the Commonwealth of Pennsylvania has an interest in the quantity and quality of the water furnished by the plaintiffs in order to secure for the public a wholesome and adequate supply thereof."

The plaintiff water companies, whose stock is owned by the plaintiff railroad company, claim to have made legal appropriation of certain of the waters of Indian Creek for their corporate purposes, and have erected a large storage dam into which the waters are collected, and allege that the defendant is operating a coal mine and has been and is draining mine water, containing large quantities of sulphuric acid, into the stream above the storage dam,

thereby rendering the waters of the stream as they flow into the storage dam unfit for domestic use or for commercial or manufacturing purposes, to which uses the plaintiffs have been devoting them.

The petition to intervene sets forth that the petitioner adopts as its cause of complaint, in addition to the averments contained in the petition, the averments of fact contained in the bill of complaint filed by the plaintiffs, exclusive of those particular to the plaintiffs therein named, the exhibits therein referred to and the prayers for relief thereunder, to the end that all rights of the public may be adequately protected and preserved. The defendant filed an answer to the petition, denying that the petition accurately states the purport of the bill of complaint; denying that the supply of pure water by the plaintiffs is necessary to the health and comfort of the citizens of Westmoreland, Fayette, Washington and Allegheny Counties; denying that the citizens of those counties who signed the petition filed with the Attorney-General have any interest in this controversy, except as consumers of water supplied by the Westmoreland Water Company, and that the Commonwealth has any direct interest in the controversy; and alleging that the interests of the citizens who signed the petition filed with the Attorney-General, and the interests of the Westmoreland Water Company, by which said citizens are supplied with water, are fully and adequately represented and protected in this action by the Mountain Water Supply Company, by which the Westmoreland Water Company is supplied, and that any interest which the Commonwealth has in the controversy is of a different nature and extent from the interests of the plaintiffs and should be separately litigated, and has no proper place in this proceeding. The principal allegations contained in the original bill of complaint, and the defendant's answers thereto, are set forth in our former opinion in this case, where we refused permission to the Westmoreland Water Company to intervene as a party plaintiff. See Mountain Water Supply Co. et al. *v.* Melcroft Coal Co., 30 Dist. R. 971.

It is stated in defendant's brief: "The issues raised by the bill and answer are (1) whether the Mountain Water and Dunbar Water Companies' appropriation was valid against the defendant; (2) whether the Mountain Water and Dunbar Water Companies have the power of eminent domain; (3) whether the Mountain Water and Dunbar Water Companies could lawfully condemn a watercourse without compensation to the upper owners; (4) whether the natural drainage of a coal mine into a stream is a property right enforceable against lower riparian owners; and (5) whether the plaintiff water companies and the plaintiff railroad did not establish their waterworks with full knowledge of the Indian Creek coal beds and with full knowledge that Indian Creek was the sole drainage from this basin. . . . This action arises out of a fundamental interference between two vast industries, involves questions of the corporate powers of, and the exercise of eminent domain by, the plaintiff water companies, and it requires a careful study of the ancient laws of riparian rights. To add to a case, already of such magnitude, wholly new and distinct questions of public health, public nuisance and public rights cannot have any result but to confuse the situation. If the Commonwealth sincerely believes that the public interests are threatened in this matter, its obvious course is to commence a proceeding in which that question can be clearly adjudicated."

As to what right the Commonwealth would have, if any, to intervene in a case like this, in the absence of statute, it is not necessary to discuss or decide. We are of opinion that the case is covered and the court is bound by the Act of May 28, 1915, P. L. 616, as amended by the Act of July 7, 1919, P. L. 731,

1 D. & C.

Mountain Water Supply Co. *v.* Melcroft Coal Co.

which provides: "That in all cases at law or in equity, in any court or before any officer, board, commission or other body having jurisdiction of the matter, in which the Commonwealth or any officer thereof may be a party, or in which the Commonwealth may have any interest, the Commonwealth shall have the right to intervene and to appear, plead, prosecute, defend or appeal as other parties litigant, but in no case shall be required to give any bond or other security for costs or for any other purpose whatever." We are unable to reach the conclusion that the Commonwealth is without "any" interest in this controversy. And, under this statute, we are of opinion that the prayer of the petitioner must be granted.

And now, Jan. 24, 1922, for the reasons stated in the opinion herewith filed, the rule for permission to intervene is made absolute, and the Commonwealth of Pennsylvania ex rel. George E. Alter, Attorney-General, is permitted to intervene as a party plaintiff in this cause.

From Luke H. Frasher, Uniontown, Pa.